408 NEW JERSEY SUPREME COURT.

Lynch v. Penna. R. R. Co. *88 N. J. L.*

## THADDEUS W. LYNCH v. PENNSYLVANIA RAILROAD COMPANY.

Submitted July 1, 1915—Decided January 13, 1916.

1. Chapter 278 of *Pamph. L.* 1910, *p.* 490, entitled "An act concerning the liability of railroads for injury to persons and property caused by running cars across public streets and highways at which crossings no safety gates, bell or other device to give warning to the traveling public has been installed," does not violate the constitutional provision which prohibits the enactment of any private, local or special laws "granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever," but applies to companies incorporated under the General Railroad law, or under special charters having similar characteristics, without regard to the nature of the motive power used by them, as distinguished from street railway companies operating trolley cars over streets and highways.

2. The power of the Supreme and Circuit Courts to consider and ascertain, on a rule to show cause, whether the finding of a jury as to the non-negligence of a plaintiff is contrary to the great preponderance of the evidence, is in nowise abridged or impaired by the legislative enactment above referred to.

3. The failure of a person, about to cross the track of a railroad, to observe the approach of a train which is in plain sight, there being nothing to distract his attention from it, is, ordinarily, a failure to use that reasonable care which the law requires of him.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and BERGEN.

For the rule, *Vredenburgh, Wall & Carey.*

Contra, *Lehlbach & Van Duyne.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought to recover compensation from the defendant for injuries received by the plaintiff through being run down by a locomotive engine at the railroad crossing at Front street, in the city of Newark.

The accident occurred on the 25th of March, 1914, shortly after six o'clock in the evening and while it was yet daylight.

The situation at the place of the accident, as shown by a map introduced in evidence by the plaintiff and as described in the testimony of witnesses produced by him, was as follows: A single track of the defendant company's railroad ran through Front street, gradually curving toward the east until it reached the bridge crossing over the Passaic river. The right of way of the railroad was shut off from the rest of the street by a picket fence about five feet high erected in that part of the street usually devoted to vehicular traffic, five feet beyond the curb line of the street and five feet short of the nearest rail of the railroad track. There was an opening in the fence approximately twelve feet wide and distant some two hundred and seventy-five to three hundred feet west of the bridge, the purpose of which was to permit travelers on the highway to cross over from one side of the street to the other. The view along the track toward the east of a person about to cross the street in the direction in which the plaintiff was traveling was interfered with by buildings until a point was reached on the sidewalk at or near the curb line. Although the plaintiff testified to the contrary, his own witnesses, as well as the map introduced by him, made it perfectly clear that from the curb line until the track was reached the view toward the east was practically unobstructed for something like two hundred and fifty feet, there being nothing at all in the way except a single pole upon which a signal had been installed; the picket fence not being high enough to interfere with the view. The grade of the railroad was a little higher than that of the rest of the street.

The plaintiff was struck by an engine, which was traveling west, as he attempted to cross over the track, after having passed through the opening in the picket fence. He testified that as he was walking along he stopped and listened but heard no whistle blowing or bell ringing; and that after he had left the sidewalk and just before he got to the track he looked both ways but saw nothing; that he then stepped on the track and was struck by something; but that he only

knew what it was that hit him from information received by him after the accident.

At the close of the plaintiff's case there was a motion for a nonsuit rested upon the ground that the evidence conclusively showed contributory negligence. The motion was denied because it appeared in the proofs that the defendant company had not installed at the crossing any safety gates, bell or other device usually employed to warn and protect the traveling public at crossings of that character, and, consequently, by force of chapter 278, pamphlet laws 1910, entitled "An act concerning the liability of railroads for injuries to persons or property caused by running cars across public streets and highways at which crossings no safety gates, bell or other device to give warning to the traveling public have been installed," the question of plaintiff's contributory negligence was one that must be left to the determination of the jury. When the whole case was in the defendant moved for the direction of a verdict in its favor upon the same ground, the facts tending to show negligence upon the part of the plaintiff not having been varied or modified by any of the testimony put into the case after the refusal to nonsuit. This motion was also refused on account of the bar created by the act of 1910. The case having been submitted to the jury a verdict was rendered in favor of the plaintiff; which, necessarily, contained a finding of no negligence on his part.

A rule to show cause having been allowed, the defendant now seeks to have the verdict set aside for three principal reasons—*first,* because there was error in the refusal to nonsuit; *second,* because there was error in the refusal to direct a verdict, and *third,* because the verdict was contrary to the great preponderance of the evidence.

The statutory provision which the trial judge considered controlled him in refusing to nonsuit or to direct a verdict for the defendant declares that "in any action against any steam railroad company brought to recover damages for injuries or death occurring at any crossing of the right of way of such steam railroad company, where such company has not installed any safety gates, bell or device usually employed to

FEBRUARY TERM, 1916.　　411

*88 N. J. L.*　　　　Lynch v. Penna. R. R. Co.

warn and protect the traveling public at such crossing, which injuries or death are alleged to be due to the negligence of said railroad company, or its agents, the plaintiff in such action shall not be nonsuited on the ground of contributory negligence on his own part or on the part of the person for whom such suit is brought, but in all such cases it shall be left to the jury to determine whether the person injured or killed was exercising due and reasonable care under the conditions existing at said crossing at the time of such injury or death." *Pamph. L.* 1910, *p.* 490. The prohibition against nonsuiting the plaintiff where the crossing is not protected in the way mentioned in the statute is express; that against the direction of a verdict for the defendant is necessarily implied by the clause providing that "in all cases it shall be left to the jury to determine whether a person injured or killed was exercising due and reasonable care." Counsel for defendant does not deny that this is the true construction of the statute, but contend that the legislature in passing it violated certain constitutional provisions which they specify. It is, however, only necessary to consider their contention that it is violative of article 4, section 7, paragraph 11 of the constitution; for, since the argument of this case, it has been decided by the Court of Errors and Appeals, in *Waibel* v. *West Jersey and Seashore Railroad Co.,* 87 *N. J. L.* 573, that none of the other provisions of the constitution to which they appeal are infringed upon by this piece of legislation.

Article 4, section 7, paragraph 11 of the constitution prohibits the enactment of private, local or special laws in certain enumerated cases, among which is the "granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever." The argument is that the act is limited in its application to railroads operated by steam, and therefore by implication confers an exclusive privilege or immunity upon railroad companies that use a motive power other than steam. We do not find it necessary to stop to consider whether the right to have the question of the contributory negligence of a person injured at a railroad crossing determined by the court, where it is considered to have been

conclusively shown, is such a privilege or immunity as is intended by the constitutional provision. The expression "steam railroad company" used in the statute is not intended to indicate the character of the motive power used, but is a colloquialism intended to describe companies incorporated under what is commonly known as "the general railroad law," or under special charters having similar characteristics, and running their trains over their own rights of way, crossing all highways between their terminal points, as distinguished from what are ordinarily designated as street railway companies operating trolley cars over and along the various streets and other highways of the state instead of over rights of way privately owned by them. The statute applies to all companies of the former class without regard to the motive power used, and counsel's contention is, therefore, without support of fact. Chapter 278 of the laws of 1910 not being constitutionally objectionable for any of the reasons suggested by counsel, the trial court was right in refusing to direct a nonsuit or a verdict in favor of the defendant.

The question remains whether a finding of the jury as to the non-negligence of the plaintiff was contrary to the great preponderance of the evidence. It is suggested that this is a matter which we are not at liberty to consider, for the reason that it was the purpose of the legislature in passing the act of 1910 to make the jury the absolute and untrammeled arbiters thereof. We find nothing in the statute indicative of such a purpose. From the inception of our judicial system, so far as reported cases show, it has been the province of the law courts on rules to show cause to determine whether a finding of the jury as to the essential facts necessary to support their verdict was fairly justified by the evidence. No reason can be suggested why the legislature should have intended to differentiate this one material fact from all others involved in the making up of verdicts and declare that as to it alone the finding of the jury regardless of whether it was unsupported by the proofs in the case should be unimpeachable. In addition to this, it is not to be inferred (in the ab-

sence of express language to that effect, and no such language is present in the statute) that it was the purpose of the legislature to curtail this power, so far as the Supreme and Circuit Courts are concerned, for the very convincing reason that it is provided by the constitution that all of the fundamental powers of these judicial tribunals shall remain inalienably established, and the legislature must be presumed to have known that such attempted curtailment would have been nugatory, as was pointed out by the Court of Errors and Appeals in *Central Railroad Co.* v. *Tunison,* 55 *N. J. L.* 561, and *Flanigan* v. *Guggenheim Smelting Co.,* 63 *Id.* 647. We conclude, therefore, that although the fact of negligence *vel non* on the part of the plaintiff is to be determined by the jury, its finding, like that of any other essential fact, is reviewable by this court on rule to show cause; and that when ascertained to be against the great preponderance of the evidence, it is the duty of this court to set aside the verdict and direct a *venire de novo.*

Looking at the proofs sent up with the rule to show cause, it seems to us that the finding of the jury upon this point was not only against the great preponderance of the evidence, but practically against its totality. As has already been stated, from the point where the plaintiff says he stood when he made his observation, the view along the track in the direction from which the engine was approaching was practically unobstructed for a distance of approximately two hundred and fifty feet. That the engine was well within this distance when the plaintiff made his observation is demonstrated by the fact that at once after doing so he stepped upon the track and was immediately struck. It follows, therefore, either that he was mistaken in his statement that he looked or else that he looked in such a perfunctory manner that he was not conscious of what was immediately before his eyes. In either event he failed to use that reasonable care for his own safety which the law requires of all persons when approaching these places of known danger. *Pennsylvania Railroad Co.* v. *Righter,* 42 *N. J. L.* 180; *Pennsylvania Railroad Co.* v. *Pfuelb,* 60 *Id.* 278;

*Swanson* v. *Central Railroad Co.* 63 *Id.* 605; *Gehring* v. *Atlantic City Railroad Co.,* 75 *Id.* 490; *Lindsay* v. *Pennsylvania Railroad Co.,* 78 *Id.* 704.

The rule to show cause will be made absolute.